# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

CHARLES LEWIS,

        Plaintiff,                        Case Number: 18-CV-13530
                                                   HON. PAUL D. BORMAN

v.

GRABOWSKI, DUBREUIL, and O.T.
WINN,

        Defendant.

_____/

## ORDER OF SUMMARY DISMISSAL

### I. Introduction

Plaintiff Charles Lewis is presently confined at the Saginaw Correctional Facility in Freeland, Michigan. He has filed a *pro se* civil rights complaint under 42 U.S.C. § 1983. Plaintiff names three defendants: two corrections officers (Grabowski and Dubreuil), and Saginaw Correctional Facility warden O.T. Winn. He claims these defendants violated his First, Eighth, and Fourteenth Amendment rights. For the reasons which follow, the complaint is dismissed.

### II. Standard

Plaintiff has been granted leave to proceed without prepayment of the filing fee for this action due to his indigence. Under the Prison Litigation Reform Act ("PLRA"), the Court is required to *sua sponte* dismiss an *in forma pauperis* complaint before service on a defendant if it determines that the action is frivolous or malicious, fails to state a claim

upon which relief can be granted, or seeks monetary relief against a defendant who is immune from such relief.  *See* 42 U.S.C. § 1997e(c); 28 U.S.C. § 1915(e)(2)(B).  Similarly, the Court is required to dismiss a complaint seeking redress against government entities, officers, and employees that it finds to be frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. See 28 U.S.C. § 1915A(b).  A complaint is frivolous if it lacks an arguable basis in law or in fact.  *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).

While a complaint need not contain "detailed factual allegations," a plaintiff's obligation to provide grounds entitling him to relief "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal and end citations omitted).  "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* at 555-56 (citations and footnote omitted).  A pro se civil rights complaint is to be construed liberally.  *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972); *Jones v. Duncan*, 840 F.2d 359, 361 (6th Cir. 1988).

### III.  Background

Plaintiff's claims arise from a confrontation with Defendant Grabowski, a corrections officer, on January 8, 2018, at the Saginaw Correctional Facility.  According to the complaint, Plaintiff was cleaning a razor in the prison restroom while conversing

with another prisoner, Smith. (Compl. at 2) During this conversation, Smith was sitting on the toilet. (*Id.* at 3) Grabowski told Plaintiff to stop talking to Smith while he was using the toilet, and to return to his cell. (*Id.*) Plaintiff did so. (*Id.*)

Plaintiff then reported for work duty in the laundry room. Grabowski called him over to the office area and ordered Plaintiff to leave. (*Id.*) Plaintiff asked why he had to leave. Grabowski did not answer that question; instead, he ordered Plaintiff to go to the dayroom or go to lockup. (*Id.* at 4) Plaintiff did not comply. (*Id.* at 3-4) Instead, Plaintiff told Grabowski that he had to be in that area for his laundry porter job. (*Id.*) Grabowski handcuffed Plaintiff and escorted him to segregation. Grabowski filed a misconduct ticket against Plaintiff for disobeying a direct order. (*Id.*)

Plaintiff claims the misconduct charge of disobeying a direct order is properly classified as a bondable Class II offense, which should have allowed him to remain in the general population. But when Defendant Dubreuil reviewed the misconduct report, he elevated the offense to a non-bondable Class I (major misconduct) offense. (*Id.* at 4) Plaintiff was placed in segregation for 18 days. (*Id*. at 7)

### IV. Discussion

#### A. First Amendment Claim

Plaintiff claims that Defendant Grabowski violated his First Amendment rights when he told Plaintiff to stop talking to the prisoner who was using the toilet. He also claims that Defendant Grabowski later issued a misconduct ticket in retaliation for Plaintiff questioning why Grabowski ordered Plaintiff to leave his work zone.

3

The First Amendment provides: "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances." U.S. Const. amend. I. "[A] prison inmate retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system." *Pell v. Procunier*, 417 U.S. 817, 822 (1974). Plaintiff's free speech rights are "uncontrovertedly limited by virtue of [Plaintiff's] incarceration." *Thaddeus-X v. Blatter*, 175 F.3d 378, 393 (6th Cir. 1999).

"[T]here is no absolute First Amendment right to communicate with other inmates." *Bear v. Kautzky*, 305 F.3d 802, 805 (8th Cir. 2002). Courts have concluded that limiting communication among inmates in specific locations is a reasonable restriction and does not constitute a deprivation of an inmate's First Amendment right to free speech. *Hendrickson v. McCreanor*, 199 F. App'x 95 (3d Cir. 2006) (district court properly awarded summary judgment to defendants on claims that the "no talking during meals" policy violated prisoners' constitutional rights because the "no talking" policy was rationally related to the prison's interests at stake).

Plaintiff does not claim that he was prohibited from communicating with other inmates at all times, for extended periods of time, or under broad circumstances. Instead, he was asked not to speak with inmates while they were using the bathroom for what is widely considered private business. This limitation does not implicate his free speech

rights.

Plaintiff's retaliation claim is also meritless. Under Sixth Circuit law, a retaliation claim has three elements: "(1) the plaintiff engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two – that is, the adverse action was motivated at least in part by the plaintiff's protected conduct." *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc).

Here, Plaintiff seeks protected status for questioning and disobeying Defendant Grabowski's order. A prisoner's behavior in violation of prison regulations, including insolence, is not "protected conduct" under the First Amendment. *Lockett v. Suardini*, 526 F.3d 866, 874 (6th Cir. 2008) (citing *Thaddeus-X*, 175 F.3d at 394; *Turner v. Safley*, 482 U.S. 78, 89 (1987)). In *Lockett*, a prisoner's profane name-calling of a hearing officer was not protected conduct because the behavior fell under the definition of "insolence" under the Michigan Department of Corrections Policy Directive governing prisoner misconduct. *Id.* at 874. *See also Caffey v. Maue*, 679 F. App'x 487, 49091 (7th Cir. 2017) (calling prison investigators "unprofessional" was a challenge to the investigators' authority and was not protected speech).

Plaintiff's conduct – disobedience of a direct order – is not protected speech under the First Amendment. His First Amendment claim will be dismissed for failure to state a claim.

5

## B. Due Process Claim

Plaintiff claims that Defendants Grabowski and Dubreuil violated his right to due process. Specifically, Plaintiff claims that Grabowski violated MDOC Policy Directive 03.03.105, ¶ 23, by placing him in segregation on a bondable misconduct. He claims a prisoner charged with a bondable misconduct should be permitted to remain in the general population. Plaintiff similarly claims that Defendant Dubreuil violated his right to due process by keeping Plaintiff in segregation pending the outcome of the misconduct hearing. Ultimately, Plaintiff spent eighteen days in segregation.

The United States Supreme Court has held that there exists no liberty interest protected by the Due Process Clause in remaining free from segregation unless the segregation "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995).

In *Sandin*, the Court held that plaintiff's thirty-day confinement in segregation did not present "the type of atypical, significant deprivation in which a state might conceivably create a liberty interest" because the conditions in disciplinary segregation, with insignificant exceptions, mirrored those conditions imposed upon inmates in administrative segregation and protective custody. *Id.* at 485. The Court held, therefore, that the Due Process Clause's procedural protections were not invoked.

Here, Plaintiff's eighteen-day confinement in segregation was neither excessively long nor indefinite. *See Mackey v. Dyke*, 111 F.3d 460, 461, 463 (6th Cir. 1997) (117 days in administrative segregation did not impose an atypical or significant hardship);

*Powell v. Washington*, 720 F. App'x 222, 226 (6th Cir. 2017) (six months in administrative segregation does not constitute an "atypical and significant" hardship implicating inmate's due process rights). Plaintiff fails to state a claim upon which relief may be granted.

## C. Eighth Amendment Claim

Finally, Plaintiff argues that Defendant Grabowski's use of handcuffs when Plaintiff did not comply with Grabowski's order constituted excessive force in violation of the Eighth Amendment's ban on cruel and unusual punishment. He also claims that the conditions of the segregation cell were so poor as to constitute cruel and unusual punishment and that Defendant O.T. Winn, the warden, violated his rights by denying his grievance.

"[T]he Eighth Amendment...forbids the 'unnecessary and wanton infliction of pain' that constitutes 'cruel and unusual punishment,' and specifically conduct that is malicious and sadistic." *Coley v. Lucas County, Ohio*, 799 F.3d 530, 537 (6th Cir. 2015) (quoting *Hudson v. McMillian*, 503 U.S. 1, 5, 7 (1992)). But "[c]orrections officers do not violate a prisoner's Eighth Amendment rights when they apply force in a good-faith effort to maintain or restore discipline." *Roberson v. Torres*, 770 F.3d 398, 406 (6th Cir. 2014) (quotations omitted). "[T]he extent of injury suffered by an inmate is one factor that may suggest whether the use of force could plausibly have been thought necessary in a particular situation, or instead evinced such wantonness with respect to the unjustified infliction of harm as is tantamount to a knowing willingness that it occur." *Hudson*, 503

U.S. at 7 (citing *Whitley v. Albers*, 475 U.S. 312, 321 (1986)) (internal quotation marks omitted).

In *Pelfrey v. Chambers*, 43 F.3d 1034 (6th Cir. 1995), the prisoner-plaintiff raised an Eighth Amendment excessive force claim. The plaintiff alleged that corrections officers, without provocation, pulled a knife, forced his hands to his sides and cut his hair with the knife, causing him to feel frightened, intimidated and threatened. *Id.* at 1035. The Sixth Circuit held that the plaintiff raised a viable constitutional claim. The Court noted that "it would certainly appear that defendants' actions ... were designed to frighten and degrade Pelfrey by reinforcing the fact that his continued well-being was entirely dependent on the good humor of his armed guards." *Id.* at 1037. The Court held the defendants' conduct to be a malicious and sadistic use of force invoked to cause harm. *Id*.

> Plaintiff describes Grabowski's conduct in removing him in this way:
>
> Grabowski came from behind the officer's desk, placed the handcuffs on me and proceeded to roughly remove me from the housing unit upon notifying yard officer that he had one to go to segregation.

Compl. at 4.

The worst that Plaintiff alleges is that Grabowski was "rough" in removing him from the housing unit. Not "every malevolent touch by a prison guard gives rise to a federal cause of action." *Hudson,* 503 U.S. at 9. The actions described by Plaintiff do not support a finding that Grabowski's actions were designed to frighten and degrade him or that Grabowski's conduct was malicious and sadistic.

Next, Plaintiff claims that the segregation unit's conditions were so poor as to violate the Eighth Amendment. According to Plaintiff, prison officials must provide prisoners in segregation with "a clean bedroll with two changes of sheets, two pillow case[s], two bath towels, two wash cloths, pillow..." Compl. at 8. He alleges corrections officers failed to provide him with clean bed linens. Instead, they provided him with the same bed linens he used in his regular cell.

While there is no "static test" to determine whether the conditions of confinement violate the Eighth Amendment, prison officials violate the Eighth Amendment when they act with deliberate indifference to an inmate's health or deprive an inmate of basic human needs, food, medical care or sanitation. *Rhodes v. Chapman*, 452 U.S. 337, 346-47 (1981). A viable Eighth Amendment claim consists of an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). The objective component requires a plaintiff to show that the deprivations to which he has been subjected deprived him of "the minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347 (1981). The subjective component requires the plaintiff to demonstrate that the prison officials acted wantonly, with deliberate indifference to the plaintiff's serious needs. *Farmer,* 511 U.S. at 834.

Here, Plaintiff was not provided with soiled linens. Instead, officials transferred the linens from Plaintiff's cell to the segregation unit, where he remained for 18 days. Even assuming that Plaintiff's sheets were not laundered during that 18-day period, the Court finds no deprivation of "the minimal civilized measure of life's necessities."

*Rhodes,* 452 U.S. at 347. *See also Miller v. Palmer,* No. 99-2352, 2000 WL 1478357, *2 (6th Cir. Sept. 27, 2000) (holding that the denial of clean bed linens for a limited period of time does not constitute an Eighth Amendment violation); *Daigre v. Maggio*, 719 F.3d 1310, 1312 (5th Cir. 1983) (lapse of three weeks between laundering of bedding did not violate the Eighth Amendment). Because the conditions alleged do not offend "contemporary standards of decency, " *Hudson*, 5 U.S. at 8 (quotation omitted), the Court dismisses this claim.

Finally, Plaintiff claims that defendant Winn's denial of Plaintiff's grievance challenging the misconduct proceeding violated his rights under the Eighth and Fourteenth Amendments. A prison official may not be held liable for denying a grievance where the official did not have any direct involvement with the alleged constitutional deprivation. *Searcy v. City of Dayton*, 38 F.3d 282, 287 (6th Cir. 1994). Plaintiff has not alleged that defendant Winn had any direct involvement with the alleged constitutional violation. Therefore, this claim is meritless.

## V. Conclusion

Plaintiff fails to state a claim upon which relief may be granted under 42 U.S.C. § 1983. Accordingly, the Court DISMISSES the complaint pursuant to 28 U.S.C. § 1915(e)(2).

The Court DENIES Plaintiff's Motion to Appoint Counsel (ECF No. 3), Motion for Temporary Restraining Order (ECF No. 4), and Motion for Summary Judgment (ECF No. 8).

The Court finds an appeal in this case would be frivolous and not taken in good faith. 28 U.S.C. § 1915(a)(3); *Coppedge v. United States*, 369 U.S. 438, 445 (1962). Therefore, Plaintiff is not certified to pursue an appeal from this judgment *in forma pauperis*. 28 U.S.C. § 1915(a)(3). Nevertheless, should Plaintiff decide to file a notice of appeal, he may seek leave from the Court of Appeals to proceed on appeal *in forma pauperis*. *See* Fed. R. Civ. P. 24(a)(5).

s/Paul D. Borman
PAUL D. BORMAN
UNITED STATES DISTRICT JUDGE

Dated: February 22, 2019